UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO LADIES' PROTECTION AND RELIEF SOCIETY,<br><br>Plaintiff,<br><br>v.<br><br>RPM BILLING, LLC, et al.,<br><br>Defendants. | Case No. 25-cv-06090-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Dkt. No. 12 |

Plaintiff, San Francisco Ladies' Protection and Relief Society d/b/a Heritage on the Marina ("Heritage"), brings this action against RPM Billing, LLC, Kovo+Holdings, LLC, KovoRCM,[1] and unnamed Does. (Dkt. No. 11-1 ("Compl.").) Heritage alleges that it contracted with Defendants to be its exclusive billing agent to seek reimbursement for skilled nursing care provided by Heritage to Medicare beneficiaries. (*Id.* ¶¶ 3–5, 14, 16.) According to the Complaint, Heritage has not received expected Medicare reimbursement for approximately $400,000 in services rendered in 2022 and early 2023. (*Id.* ¶¶ 21, 41.) Heritage alleges that it repeatedly informed Defendants of the outstanding claims, but Defendants failed to submit or re-submit the claims, and intentionally misrepresented the status of the outstanding claims to Heritage. (*Id.* ¶¶ 37–38.) Heritage brings claims for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), fraudulent misrepresentation (Count III), negligent misrepresentation (Count IV), breach of fiduciary duty (Count V), and violation of

---

[1] The Complaint alleges that RPM Billing was acquired by Kovo+Holdings, and KovoRCM. (Compl. ¶ 19.) Because the parties do not distinguish between the various corporate defendants for purposes of the motion to dismiss, this Order refers to them jointly as "Defendants."

the Unfair Competition Law ("UCL") and False Advertising Law ("FAL") (Count VI). Defendants move to dismiss Heritage's Second through Sixth causes of action. (Dkt. No. 12 ("Motion").) They allege that Heritage's fraud-based claims fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and that the claims are either barred by the economic loss doctrine or are otherwise duplicative of the breach of contract claim. (*Id.* at 2.)[2] For the reasons discussed below, the Motion is **GRANTED IN PART AND DENIED IN PART**. This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

*Rule 9(b) (Counts III, IV, VI)*. The fraud- and misrepresentation-based claims are pled with sufficient particularity under Rule 9(b).[3] Defendants argue that Heritage "fails to allege how RPM's representations were false or misleading," (Dkt. No. 12-1 at 6), but the Complaint contains sufficient allegations of specific statements that are plausibly pled to be false and misleading.

The Complaint alleges that, between January and March 2023, Heritage was in communication with three of Defendants' representatives, Lainie Brown, Melissa Kelly, and Jessica Metevier, to discuss "outstanding claims and the status of their submission." (Compl. ¶¶ 21–27.) According to the Complaint, these representatives "assure[d] Heritage that all outstanding claims would be submitted and reimbursed before [] May 30, 2023." (*Id.* ¶ 27.) Then, on May 31, 2023—one day after the date when Defendants had allegedly stated that all claims would "be submitted and reimbursed"—Kelly informed Heritage via email that they had resolved "submission error[s] . . . and the claims are getting submitted." (*Id.* ¶ 32.) In June and July 2023, Kelly and Metevier continued to insist that the claims had been submitted appropriately and would be paid, and on July 7, Metevier stated that "approximately 200 claims

---

[2] All citations to page numbers refer to ECF pagination.

[3] Because all three claims are adequately pled under Rule 9(b), this Order does not reach the issue of whether a lesser pleading standard applies to Heritage's negligent misrepresentation claim.

2

had been submitted." (*Id.* ¶¶ 34–35.)

The Complaint alleges that Heritage still has not been reimbursed. (*Id.* ¶ 41.) Heritage argues that this is evidence that Defendants "failed to submit claims [] that were properly filled out . . . , and then failed to correct and re-submit those claims" after May 31, 2023, all while "intentionally misrepresent[ing] the status of the outstanding claims to Heritage." (*Id.* ¶¶ 35, 37–38.) Heritage allegedly was and is unable to confirm the actual status of the claims because, since April 1, 2023, only Defendants have had access to the associated account showing the claim status. (*Id.* ¶ 29.)

These factual allegations are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). Heritage has identified specific assurances made by Defendants' agents, over the course of many months, that the relevant claims had been submitted appropriately and would be paid. Contrary to these assurances, the claims were allegedly never paid. And while a claim might not be stated based solely on the statements made in February and March, the final assurances in June and July are sufficiently alleged to be intentionally (and negligently) misleading. Those statements in June and July indicated that the claims had been properly re-submitted when it is plausible to infer that they had not been, given the lack of any subsequent payment. Moreover, it is further plausibly alleged that Defendants were aware of that fact when they represented otherwise. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

Defendants also argue that Heritage's claims fail because the Complaint does not "specify how many claims were successfully processed, or whether there were complicating details about the allegedly unprocessed claims." (Dkt. No. 12-1 at 6.) Such granularity is not required to satisfy Rule 9(b), and the issues Defendants raise are better addressed at summary

3

judgment.  The Motions is denied as to the Rule 9(b) argument.[4]

***Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)***.  Heritage has not stated a claim as to Count II.  The Complaint does not identify any frustration of purpose separate from the duties Defendants owed under the contract.  (Compl. ¶¶ 48–53.)  In opposition to dismissal, Heritage argues that Defendants "swe[pt] problems under the rug and provide[d] Heritage with false assurances" (Dkt. No. 15 at 11), but does not explain how this frustrated the purpose of the parties' agreement separate and apart from the alleged breach of contract itself.  *See Lamke v. Sunstate Equip. Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004) (examining precedent and explaining that under California law, "in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract"); *see also Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014).  Nor does Heritage identify any case where a California court has found that covering up a breach of contract constitutes a breach of the implied covenant.  Count II is dismissed, with leave to amend, for failure to state a claim.

***Breach of Fiduciary Duty (Count V)***.  Count V is also dismissed, because Heritage has not stated a claim for breach of fiduciary duty.  Heritage alleges that Defendants' "fiduciary duties arose based upon the special trust placed in Defendants, the disparity in the parties' knowledge with regard to claims reimbursement, and by Defendants' unique position as Heritage's sole point of contact to government funding."  (Dkt. No. 15 at 10.)  However, "before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.'"  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150 (Cal. 2008) (quoting *Committee on Children's Television, Inc. v. General Foods Corp.*, 673 P.2d 660, 675–76 (Cal. 983) ("*Children's Television*")).  Neither of these requirements is

---

[4] Because the UCL and FAL claims are derivative of the fraudulent misrepresentation claim and Defendants do not raise any separate argument for why this count should be dismissed pursuant to Rule 9(b), the same reasoning and result applies to them.

4

plausibly pled.

Heritage has not alleged that Defendants, either through their contractual agreement or otherwise, knowingly agreed to act on behalf of and for the benefit of Heritage as its fiduciary. *Children's Television*, 673 P.2d at 676.  Rather, the parties are alleged to have agreed to a classic mutually beneficial contractual relationship, where Defendants would process claims for Heritage in exchange for payment.  The fact that Defendants were aware that Heritage could not view its own claims status after April 1, 2023 is not sufficient to plausibly infer that Heritage knowingly undertook a fiduciary obligation.

Nor does the Complaint allege facts indicating that a fiduciary relationship existed as a matter of law.  In opposition, Heritage argues that an "agency relationship" existed between Defendants and itself, and was a traditional fiduciary relationship.  But an agent is one who has "authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties," *Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993), and who may "exercise a degree of discretion in effecting the purpose of the principal," *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1328 (1996).  The Complaint does not allege any facts that would give rise to such a relationship.  Count V is dismissed, with leave to amend, for failure to state a claim.

***Economic Loss Doctrine (Counts III, IV, and VI)***.  Heritage's fraud-based claims (Counts III and VI) are not barred by the economic loss doctrine because, as discussed above, Heritage has pled that Defendants made misleading statements that were allegedly intended to hide from Heritage the fact that Defendants were in breach of their contractual obligations.  And because Heritage allegedly relied on the misrepresentations, it did not promptly engage another billing service or otherwise take steps to ensure timely submission of its claims.  (Compl. ¶ 60.)  Therefore, Heritage has alleged both acts and "harm above and beyond a broken contractual promise."  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021); *see also Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1235 (Cal. 2024) (examining precedent and explain that where misrepresentations were not simply the "means of breaching [the] contract," the economic

5

loss doctrine was inapplicable).

The same analysis applies to Heritage's negligent misrepresentation claim.  *See Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (holding that economic loss rule did not bar a suit for negligent misrepresentation where "one party has lied to the other"); *see also Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL 2830663, at *7 (N.D. Cal. Mar. 28, 2024) (collecting cases denying motions to dismiss negligent misrepresentation claims based on the economic loss rule).  Therefore, the Motion is denied as to the economic loss argument.[5]

*Conclusion*.  For the forgoing reasons, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  Because the Court cannot find that amendment would be futile, dismissal is with leave to amend.  Any amended complaint shall be filed by **December 16, 2025**.  If Heritage does not file an amended complaint by that date, the case will proceed on the initial Complaint.

**IT IS SO ORDERED.**

Dated: November 25, 2025

                                                 RITA F. LIN
                                                 United States District Judge

---

[5] If Heritage is able to cure the deficiencies this Order has identified in Counts II and V, those claims would not be barred by the economic loss doctrine for the same reasons discussed above.